# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | : | |
| CUSTOM POULTRY | : | |
| PROCESSING, LLC, | : | CHAPTER 7 |
| | : | BANKRUPTCY |
| Debtor. | : | NO. 11-00107 |
| CUSTOM POULTRY | : | |
| PROCESSING, LLC, | : | |
| | : | ADVERSARY |
| Plaintiff, | : | NO. 12-09004 |
| v. | : | |
| | : | |
| CHARLES AUSTIN LIMITED; C-GO | : | |
| INTERNATIONAL, INC.; and CEDAR | : | |
| RIVER POULTRY, LLC, | : | |
| | : | |
| Defendants. | : | |

## ORDER ON DEFENDANT CEDAR RIVER POULTRY, LLC'S MOTION TO DISMISS ADVERSARY PROCEEDING (ECF DOC. No. 6)

This matter came before the Court on the Defendant Cedar River Poultry,

LLC's Motion to Dismiss. The Court held a telephonic hearing on March 2, 2012.

Todd Prichard and Thomas Fiegen appeared on behalf of Defendant Cedar River

Poultry, LLC. Ronald Martin appeared on behalf of Plaintiff Custom Poultry

Processing, LLC. Dale Putman appeared on behalf of the Third-Party Plaintiffs.

After hearing the arguments of counsel, the Court took the matter under

advisement.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (N), and (O).

## STATEMENT OF THE CASE

Debtor Custom Poultry LLC ("Custom Poultry") filed this three-count adversary action against Charles Austin Limited ("CA"), C-Go International, Inc. ("C-GO"), and Cedar River Poultry, LLC ("Cedar River").  The Complaint presents three claims: 1) breach of contract; 2) fraud; and 3) civil contempt.  Each of the claims stems from the sale of assets from the bankruptcy estate to CA and C-GO and issues surrounding certain leases that were not assumed by CA and C-GO.

Cedar River did not enter into any agreements with the estate for the purchase of assets.  Instead, it was assigned CA and C-GO's rights under the agreement after the sale.  Cedar River moves to dismiss this adversary arguing Custom Poultry lacks standing, the claims are not ripe, and Custom Poultry has failed to properly plead an action for civil contempt.  After review of the pleadings and analysis of the claims, the Court finds Custom Poultry has presented a properly pled complaint, has standing to present the claims, and the claims are ripe. Accordingly, the Court will deny Cedar River's Motion to Dismiss.

## BACKGROUND AND ARGUMENTS

Creditors filed a Chapter 7 Involuntary Petition against Custom Poultry on January 20, 2011.  Custom Poultry operated a chicken processing facility at 901 N.

2

Main Street, Charles City, Iowa.  Upon motion by Custom Poultry, the Court

converted the case to a Chapter 11 on February 1, 2011.

Custom Poultry was formed in August 2009.  Shortly after its creation, it

adopted the name of Bushman Family Farms, LLC, to utilize as a brand name in its

marketing efforts.  Shortly after the bankruptcy filing, the Court approved Custom

Poultry's application to employ EP USA, LLC d/b/a Equity Partners, Inc. ("EPI")

as a broker to assist in marketing the business for sale.

On April 19, 2011, Custom Poultry filed a Motion for Authority to Sell

Assets Free and Clear of Liens and Other Encumbrances in the underlying

bankruptcy under 11 U.S.C. § 363.  Custom Poultry and EPI prepared procedures

to take bids on Debtor's assets.  The Court approved the Bid Procedures on May 4,

2011.  According to the Complaint, the Bid Procedures:

> [S]et forth requirements that an interested party must meet in order to
> be considered a 'qualified bidder' who could submit an offer to buy
> the Plaintiff's assets and participate in the auction of the Plaintiff's
> assets.  The procedures ensured that qualified bidders were identified
> and that qualified bidders were given a fair opportunity to bid at an
> auction for the Plaintiff's assets.

(Compl., ECF Doc. No. 1, at ¶ 18.)  The Bid Procedures required each bid entered

to be accompanied by a signed Asset Purchase Agreement ("APA").  Custom

Poultry's counsel drafted the APA it intended to utilize.  Bidders were permitted to

revise the APA – so long as the proposed changes were identified in "redline" so

that the revised version could be compared to other bids.

3

Four "lots" of property were created to be auctioned off:

> Lot 1 consisted of all personal property, machinery, and equipment
> excluding equipment covered by leases specifically identified in
> Exhibit "E" of the Asset Purchase Agreement; Lot 2 consisted of all
> real property owned by the Plaintiff legally described in Exhibit "A";
> Lot 3 consisted of all intellectual property associated with the business
> including, but not limited to all trademarks, trade names, customer
> lists, and goodwill, and Lot 4 consisted of frozen inventory to be
> determined by physical inventory before closing.

(Id. at ¶ 21.)  The Bid Procedures required bidders to provide a current financial

statement—or other financial documentation evidencing the bidder's ability to

close the sale—and a good-faith deposit in cash or certified funds in an amount not

less than $200,000.00.  The Bid Procedures also expressly provided purchasers the

option to assume executory contracts and unexpired leases.  On May 25, 2011, the

day before the auction, CA and C-GO submitted an APA with an offer of

$2,000,000.00 for Lots 1, 2, and 3.  The Complaint described the offer in more

detail:

> Peter Ng signed on behalf of CA and C-GO.  CA and C-GO did not
> make any revisions to the standard APA provided to them by EPI.
> Included with the APA was Exhibit "E" in which CA and C-GO
> indicated that their offer included the assumption of all the identified
> executory contracts and unexpired leases with the exception of the
> Diversified Packaging, Inc. lease.

(Id. at ¶ 30.)  Custom Poultry rejected the offer and put each of the lots up

separately for auction the next day.

4

The auction resulted in the sale of Lots 1 and 2. Lots 3 and 4 were not sold. CA and C-GO collectively made the highest offer for Lots 1 and 2 with a bid of $2,275,000.00. The bid included the assumption of all the unexpired leases and/or executory contracts listed on Exhibit "E" of the attachment to the APA, except for the lease with Diversified Packaging, Inc.

> After considering all of the bids, [Custom Poultry] determined that CA and C-GO's bid was the most favorable bid because the bid was for the highest dollar amount, included the assumption of all executory contracts and unexpired leases except for the Diversified Packaging, Inc. lease, and did not contain conditions precedent, other than those contained in the draft APA.

(Id. at ¶ 35.) Custom Poultry considered a bid from Ozark Mountain the second most favorable bid and designated it as the "back-up bid". Ozark Mountain bid $1,600,000.00 for Lots 1 and 2. The bid did not contain any contingencies—other than those in the draft APA—and did not contain any provisions for assumption of executory contracts or unexpired leases. An entity called Maple Lodge also bid on Lots 1 and 2. It bid $2,225,000.00. Custom Poultry and EPI rejected the bid as it included additional conditions making the bid contingent on government approval of construction of a waste-water facility by a specific date and only assumed one contract.

CA and C-GO filed an objection to Ozark Mountain being designated as back-up bidder. They requested that their final bid be lowered to $1,625,000.00—their last bid that exceeded Ozark Mountain's back-up bid. The Court denied the

request and concluded CA and C-GO were bound by their high bid of

$2,275,000.00.

> On May 27, 2011, the Court entered a consent Order granting the Motion to Sell and approving the sale of the Plaintiff's assets to CA and C-GO pursuant to the APA signed by CA and C-GO, and for the final amount bid at the auction [$2,275,000.00]. Counsel for CA and C-GO consented to the entry of the Order.

(Id. at ¶ 41.) CA and C-GO later assigned their rights under the APA to Cedar

Valley.

Custom Poultry now seeks to recover damages resulting from the failure of

CA, C-GO, and/or Cedar Valley to assume the contracts it agreed to assume in the

APA attached to the May 27, 2011 Consent Order. Custom Poultry alleges the

following in support of its claims:

> 42. After the May 27, 2011 hearing, but prior to entry of the Order granting the Sale Motion, Greg DeWeese, President of Custom Poultry Processing; Attorney Todd Prichard, counsel for CA and C-Go; Peter Ng on behalf of CA; Feng Qiong Hu on behalf of C-GO; and Attorney Joseph Peiffer, counsel for the Plaintiff, met to finalize the offer and acceptance of the assets and finalize the terms of the Order Approving the Sale (Doc. 159). Also, in attendance was Kylie Ku.

> 43. Mr. DeWeese was present when Attorney Prichard explained the APA to Peter Ng and Feng Qiong Hu.

> 44. Mr. Prichard specifically explained that CA and C-GO were agreeing to assume all the executory contracts and unexpired leases on Exhibit "E" of the APA except for the unexpired lease with Diversified Packaging, Inc. Mr. Prichard explained that by placing a mark by each lease and signing the APA, CA and C-GO were agreeing that they wanted to take assignment of each so identified unexpired lease and executory contract, and were directing the Plaintiff to assume the contracts and leases and assign them to CA and

6

C-GO.   Mr. Prichard also explained that the companies would be required to cure the defaults under each lease they identified.

45.   Peter Ng, on behalf of CA, and Feng Qiong Hu, on behalf of C-GO, executed the APA.   Greg DeWeese executed the APA on behalf of the Plaintiff.

46.   Counsel for CA and C-GO notified counsel for the Plaintiff that it had organized CRP [Cedar River] as an entity to take the conveyance of the real property and personal property specified in the APA.   CRP [Cedar River] was also to take assignment of the leases to be assumed and assigned by the Plaintiff.

47.   On June 27, 2011, the Plaintiff filed Motions to Assume and Assign the leases and executory contracts with Charles City Area Development Corporation (Doc. 186); Come Monday, LLC (Doc. 187); and River City Communications (Doc. 185).   Attorney Prichard signed on behalf of CRP [Cedar River] on each of the Motions.

48.   On June 28, 2011, Attorney Prichard met with Greg DeWeese and Plaintiff's counsel to execute documents closing the sale.   Greg DeWeese on behalf of the Plaintiff, expressed his concern that the lease and executory contract assumption be completed along with the rest of the closing.   As an inducement to complete the closing, Attorney Prichard assured Mr. DeWeese that he knew his clients had an obligation to assume all of the leases and executory contracts that they had identified in Exhibit "E" to the APA, and that he just needed additional time to complete the assumptions.   Mr. Prichard further advised Mr. DeWeese that if he (Mr. DeWeese) would complete the closing, then Mr. Prichard would take care of the lease assumption details.

49.   Relying on Mr. Prichard's representations, the Plaintiff executed the closing documents on June 28, 2011.

50.   On June 30, 2011, CRP [Cedar River] filed a Motion to Modify Sale Order Relating to Plaintiff's Leases with PNC, TCF, and Wells Fargo (Doc. 195).   In its Motion, CRP [Cedar River] stated that "[u]pon further investigation, after negotiations with lessors and additional due diligence, CRP has made a business determination that it does not wish to assume the leases with PNC Equipment (two of three), TCF Equipment Finance, and Wells Fargo Equipment Finance."

51.   On July 1, 2011, the Plaintiff filed a Motion to Assume and Assign Lease with PNC Equipment Finance, LLC seeking to assume and assign a master lease and certain schedules, but not all schedules

under the PNC Equipment Finance, LLC (Doc. 196).    Attorney
Prichard signed the Motion on behalf of CRP [Cedar River].

52.    At the hearing on the Motion to Modify Sale Order and
Motion to Assume and Assign Lease with PNC Equipment Finance,
LLC, counsel for CRP [Cedar River] stated that CRP [Cedar River]
would not honor its commitment regarding the assumption and
assignment of leases.    CRP's counsel further stated that CRP would
not provide additional "adequate assurance" of future performance to
PNC Equipment Finance, LLC.    CRP's counsel also represented that
CA and C-GO's representatives were not aware that they had agreed
to assume and take assignment of contracts pursuant to the APA.
. . . .

57.    The Plaintiff entered into agreements and orders regarding
the Wells Fargo Equipment Finance, Inc.; PNC Equipment Finance,
LLC; and TCF Equipment Finance, Inc. leases expressly preserving
all its rights to bring actions based on the Sale Order and APA.
(Docs. 221, 238, 252, 297, 321, 307, and 320) lifting the automatic
stay to permit the lessors to take possession of the subject equipment
and dispose of said equipment in order to mitigate their damages
under the lease agreements.

(Id. at ¶¶ 42-57.)[1]

In sum, Custom Poultry asserts that Cedar River, CA, and/or C-GO

purchased equipment subject to unexpired leases without assuming or taking

assignment of the unexpired leases as they promised to do.  On January 20, 2012,

Custom Poultry filed the current adversary against CA, C-GO, and Cedar River (as

CA and C-GO's assignee), alleging breach of contract, fraud, and/or civil

contempt.

---

[1] The "Doc." References in Custom Poultry's Complaint refer to the CM/ECF
Document number in the bankruptcy action, 11-00107.

On February 20, 2012, Cedar River filed this Motion to Dismiss Adversary Proceeding.  Cedar River argues Custom Poultry lacks standing, the claims are not ripe, and Plaintiff has failed to properly plead a cause of action upon which relief can be granted.  In particular, Cedar River argues that Custom Poultry has experienced no damages and accordingly lacks standing to bring the current action. "As of the date of filing this Motion to Dismiss . . . none of the lessors who were granted relief from the automatic stay have filed a claim for damages against the Debtor for the unassumed leases."  (Mot. to Dismiss, ECF Doc. No. 6, at 3.)  Cedar River requests the Court dismiss Counts I and II because Custom Poultry is unable to show standing.  Cedar River further argues that this lack of injury and/or damages means the Court should also dismiss the action because the claim is not ripe.  Cedar River argues that until PNC, TCF, or Wells Fargo makes a claim against Custom Poultry any damage is a speculative or hypothetical matter and not ripe for adjudication.

Cedar River also argues that on the facts pled Custom Poultry has failed to properly plead a cause of action for civil contempt (Count III).  Cedar River contends that Custom Poultry fails to link Cedar River's failure to assume the leases to a violation of the Court's sale order and thus fails to state a claim upon which relief can be granted.

Custom Poultry resists arguing Cedar River's motion relies improperly on "numerous additional facts . . . outside of the Plaintiff's complaint," and includes numerous factual misstatements.  (Obj., ECF Doc. No. 10, at 2.)  Custom Poultry argues that it has pled a specific injury sufficient to provide standing and make the claim ripe by asserting, "diminution of the bankruptcy estate through the addition of pre-petition unsecured claims of the parties to the contracts, and the post-petition administrative claims of the parties to the contracts."  (Id. at 4.)  Plaintiff argues a claim of civil contempt was properly pled in the Complaint by asserting a direct violation of the court's order.

## CONCLUSIONS OF LAW & DISCUSSION

The Bankruptcy Rules implement the Federal Rules of Civil Procedure standards for dismissal and requirements for pleading.  Bankruptcy Rule 7012 specifically notes: "Rule 12(b)-(i) Fed. R. Civ. P. applies in adversary proceedings."  Fed. R. Bankr. P. 7012.  Cedar River argues Custom Poultry's Complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and that the Court lacks subject-matter jurisdiction under Rule 12(b)(1).

### A.   STANDING

Defendant argues that Count I, breach of contract, and Count II, fraud, should be dismissed for lack of standing.  "It is well established that standing is a

jurisdictional prerequisite that must be resolved before reaching the merits of a

suit." City of Clarkson Valley v. Mineta, 495 F.3d 567, 569 (8th Cir. 2007).

Standing is a "threshold inquiry" which "normally requires an evaluation of (1)

injury, (2) causation, and (3) redressability." Id.  Article III of the Constitution of

the United States makes standing a requirement for a justiciable case or

controversy.  See Turkish Coal. of Am., Inc. v. Bruininks, No. 11-1952, 2012 WL

1538622, at *3 (8th Cir. May 3, 2012).  "'To show Article III standing, a plaintiff

has the burden of proving: (1) that he or she suffered an injury-in-fact, (2) a causal

relationship between the injury and the challenged conduct, and (3) that the injury

likely will be redressed by a favorable decision.'"  South Dakota v. United States

Dep't of Interior, 665 F.3d 986, 989 (8th Cir. 2012) (quoting Pucket v. Hot Springs

Sch. Dist. No. 23-2, 526 F.3d 1151, 1157 (8th Cir. 2008)); see Medalie v. Bayer

Corp., 510 F.3d 828, 830 (8th Cir. 2007).

> When standing—and thus a court's jurisdiction—is challenged, 'the
> party invoking federal jurisdiction bears the burden of establishing
> these elements.'  Because the requirements of standing 'are not mere
> pleading requirements but rather an indispensable part of the
> plaintiff's case, each element must be supported in the same way as
> any other matter on which the plaintiff bears the burden of proof, i.e.,
> with the manner and degree of evidence required at the successive
> stages of the litigation.'  Thus, in response to a motion to dismiss,
> **'general factual allegations of injury resulting from the**
> **defendant's conduct may suffice, for . . . we presume that general**
> **allegations embrace those specific facts that are necessary to**
> **support the claim.'**

City of Clarkson Valley, 495 F.3d at 569 (emphasis added) (citations omitted).

Cedar River alleges Custom Poultry lacks standing to bring the breach of contract and fraud claims in Counts I and II.  The elements necessary to plead a breach of contract claim are well-established:

> To establish a claim for breach of contract, [the plaintiff] must prove the following five elements: '(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [plaintiff] has performed all the terms and conditions required under the contract; (4) [that] defendant[ ] breach[ed] . . . the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.'

Union County v. Piper Jaffray & Co., 741 F. Supp. 2d 1064, 1089 (S.D. Iowa 2010) (quoting Molo Oil Co. v. River City Ford Truck Sales, Inc., 578 N.W.2d 222, 224 (Iowa 1998)).

To properly plead a cause of action for fraud a plaintiff must allege the following elements: "(1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, and (7) resulting injury and damage."  Robinson v. Perpetual Servs. Corp., 412 N.W.2d 562, 565 (Iowa 1987); see Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n, 666 F.3d 1099, 1106 (8th Cir. 2012); Asbury Square, LLC v. Amoco Oil Co., 218 F.R.D. 183, 188 (S.D. Iowa 2003).

In both causes of action, Cedar River argues Custom Poultry has failed to plead damages as a result of the alleged conduct.  Cedar River argues that the claim of damages or injury is essentially just speculative because PNC, TCF, or Wells Fargo – the parties effected by the failure to assume the contracts – have not filed claims for cure of the breach of the leases.  Cedar River argues because PNC,

12

TCF, and Wells Fargo have reclaimed the items Custom Poultry had obtained

under the leases, and the creditors have not currently made a demand on Custom

Poultry to cure the leases, or filed a claim for the cure amounts on the leases, there

is no injury.  Cedar River thus argues damage claims are speculative.

In response, Custom Poultry argues that the Complaint specifically states:

> The Defendants' failure to follow through with the assumption,
> assignment, and cure of the defaults of the Remaining Contracts
> results in a diminution of the bankruptcy estate through addition of
> pre-petition unsecured claims of the parties to the contracts and the
> post-petition administrative claims of the parties to the contracts.

(Comp., ECF Doc. No. 1, at ¶ 72.)  Custom Poultry alleges the bankruptcy estate

was damaged by Cedar Rivers' failure to perform its duties under the APA.

Custom Poultry reiterates its claim for damages as a result of the diminution of the

bankruptcy estate, as stated in the Complaint.  (Obj., ECF Doc. No. 10, at 4.)

Custom Poultry further argues:

> [U]nder 11 U.S.C. § 1107, a debtor-in-possession has all of the rights,
> powers, and duties of a trustee serving [in] Chapter 11.  These duties
> include maximizing the value of the bankruptcy estate for the benefit
> of creditors.  As set forth in the complaint, the Debtor liquidated its
> assets pursuant to Order of the Court.  The successful bidder at the
> sale agreed to assume certain contracts, and after the sale, breached its
> duty to assume the contracts.  Cedar River Poultry has represented to
> this Court that it is an assignee of the purchase Agreement identified
> in the Plaintiff's complaint.  TFC Equipment Finance, Inc. filed Proof
> of Claim #85; PNC Equipment filed Proofs of Claim # 90, 91, and 92;
> Wells Fargo Equipment Finance, Inc. filed Proofs of Claim # 121 and
> 122; and the Iowa Department of Economic Development filed Proof
> of Claim # 131.  The successful bidder agreed to assume and cure the
> default under each of these unexpired leases and executory contracts.

Accordingly, the Plaintiff's bankruptcy estate is damaged to the extent that any of the pre-petition claims of these creditors was not cured. Further, these creditors may have post-petition administrative priority claims which would have been cured when the contracts were assumed. The Plaintiff's bankruptcy estate is damaged to the extent of the uncured post-petition priority claims. Finally, the Plaintiff's estate was damaged through the fraud perpetrated on it through the expenditure of resources needed to address the successful bidder's refusal to perform as agreed.

(Id. at 4 – 5.)

The Court finds that Custom Poultry has pled and provided adequate evidence of injury resulting in damages. It has, first and foremost, pled non-speculative damages in the form of failure to cure – and thus eliminated or reduced – the proofs of claim already pending against the estate. This damage is sufficient to establish a non-speculative damage claim on both the contract and fraud claims. The other, additional, damages pled by Custom Poultry also are sufficient to show standing for the contract and fraud claims. The Court concludes Cedar River's claim that Custom Poultry lacks standing is without merit.

In reaching this conclusion, the Court also rejects Cedar River's argument that no injury is possible because it was acting under the Post-Closing Indemnity Agreement. Cedar River pointed to Paragraph 5 of the Post-Closing Agreement which states: "Purchaser [Cedar River] is endeavoring to verify whether it will fulfill its commitment to Assume the leases and contract shown on the Asset Purchase Agreement 'E'." (Mt. to Dismiss, ECF Doc. No. 6, at 5.) Cedar River

14

argues "[A]ny injury to Debtor that arose from Cedar River Poultry, LLC not

assigning the Debtor's leases was not caused without Cedar River Poultry's

agreement." (Id.)  Cedar River asserts the proper time to challenge its refusal to

assume the leases and executory contracts would have been during the Motion to

Modify Sale.  Cedar River argues Custom Poultry's failure to challenge the refusal

to assume the lease during the Motion to Modify Sale was a form of consent.

Custom Poultry disagrees arguing it objected to the Motion to Modify Sale and

Cedar River's refusal to assume the leases and thus Cedar River's "waiver"

argument is without merit.

The Court concludes this argument, at best, may be an affirmative defense to

Plaintiff's Complaint, but does not eliminate Plaintiff's standing.  At a minimum,

the Post-Closing and Indemnity agreement appears to contain contradictory

recitals.  These contradictions, however, do not foreclose Debtor's claim.  A

comparison of all relevant recitals in the Post-Closing Indemnity Agreement shows

the apparent contradictions:

> 3. Seller is obligated on all leases of equipment not assumed at closing
> by Cedar River Poultry, LLC.
> 4. In the Asset Purchase Agreement Purchaser has agreed to Assume
> leases and contracts 1, 2, 4, 5, 6, 7, 8, 9, 10, 11 and 12 as is shown on
> Exhibit "E".
> 5. Purchaser is endeavoring to verify whether it will fulfill its
> commitment to Assume the leases and contract shown on the Asset
> Purchase Agreement Exhibit "E".

(Def. Exh. 1, ECF Doc. No. 6, at 9.)  Paragraph 5 would appear to contradict

Paragraph 4 in that Cedar River already agreed to assume the leases and contracts.

Nothing in these contradictory provisions, however, invalidates claims to damages

that could follow.

Cedar River seems to acknowledge the contradictions to some degree by

seeking an order to modify the APA.  This action was itself evidence that Cedar

River did not want to fulfill the obligations for which it had originally contracted.

Cedar River's argument that Custom Poultry "waived" the current claim by not

objecting and thus "sitting on its rights" is further without merit.  Custom Poultry

specifically objected to Cedar River's request to modify the APA.  (11-00107, ECF

Doc. No. 200.)

Moreover, on October 12, 2011, the Court entered a stipulated order from

the parties on the Motion to Modify Sale finding it was moot and deemed

withdrawn.  (11-00107, ECF Doc. No. 320.)  The Stipulated Order stated in part:

> Nothing in the Stipulated Order shall constitute or be construed as a
> waiver of any right of any party to seek damages or other relief arising
> from the Asset Purchase Agreement between Debtor, Charles Austin
> and C-Go and the Sale Order, and nothing herein shall constitute or be
> construed as a defense to a claim arising from the Asset Purchase
> Agreement or Sale Order.

(Id. at ¶ 8.)  Cedar River's arguments implying Custom Poultry was improperly

"sitting on" its rights or had waived the current claims are directly contrary to the

record and entirely without merit.

Based on the above findings, Custom Poultry has standing to bring the current claims and Cedar River's argument in support of its Motion to Dismiss claiming lack of standing is without merit.

## B. Ripeness

Cedar River makes similar and/or related arguments that Counts I and II are not ripe arguing: "Debtor does not show any claim made by PNC, TCF, and Wells Fargo regarding these leases that constitutes damages." (Mt. to Dismiss, ECF Doc. No. 6, at 6.) Cedar River further argues Custom Poultry cannot "stand in" for these creditors and allege damages.

> "The ripeness doctrine is aimed at preventing federal courts, through premature adjudication, from 'entangling themselves in abstract disagreements.'" Citizens for Equal Protection v. Bruning, 455 F.3d 859, 863 (8th Cir. 2006) (quoting Thomas v. Union Carbide Arg. Prods. Co., 473 U.S. 568, 580 (1985)). "Ripeness is demonstrated by a showing that a live controversy exists such that the plaintiffs will sustain immediate injury from the operation of the challenged [action], and that the injury would be redressed by the relief requested." Employers Ass'n Inc. v. United Steelworkers, 32 F.3d 1297, 1299 (8th Cir. 1994).

Wersal v. Sexton, 674 F.3d 101, 1018 (8th Cir. 2012).

The crux of Cedar River's ripeness argument is:

33. Only PNC, TCF, and Wells Fargo can claim the contract was breached and that the cure amount must be collected.
34. Until PNC, TCF, and Wells Fargo make a claim against Debtor any damage is a speculative or hypothetical matter and therefore not ripe.

17

(Mt. to Dismiss, ECF Doc. No. 6, at 6.)  The Court finds Cedar River's ripeness

arguments to be without merit for reasons similar to those noted in the standing

discussion – and for additional reasons.  Cedar River does not explain how PNC,

TCF, or Wells Fargo would have standing to bring a breach of contract action

when they were not parties to the APA.  Cedar River further provides no legal

analysis as to how the ripeness doctrine affects the current factual record.

Custom Poultry's response to Cedar River's ripeness argument, in sum, is as

follows:

> Here the Plaintiff's claims are ripe because the Plaintiff set forth its
> injury of a diminution of its bankruptcy estate by the addition of pre-
> petition secured claims of the parties to the remaining Contracts and
> the post-petition administrative priority claims of the parties to the
> Remaining Contracts; the injury occurred at the time the Defendants
> refused to take assignment of the Remaining Contracts; and that the
> Plaintiff is seeking an amount sufficient to "cure" the amount that is
> payable under the Remaining Contracts.  The Plaintiff is further
> seeking punitive damages based on the fraud perpetrated by the
> Defendants in inducing the Plaintiff to determine that they should be
> the "successful bidder" at the auction.

(Obj., ECF Doc. No. 10, at 7, ¶ 24.)  The Court agrees and adopts Custom

Poultry's position.

The matter currently before the Court is not abstract.  A live controversy is

present in which a contract was allegedly entered into, the contract terms were

allegedly breached, and damages resulted.  The factual allegations in the

Complaint also adequately allege a fraud claim that is ripe for adjudication.  Cedar

River's request for dismissal based on lack of ripeness is denied.

### C.    Count III- Failure to State a Claim

Cedar River's last argument is that Custom Poultry fails to adequately state a

claim for civil contempt.  In order to determine whether a complaint states a "claim

upon which relief can be granted," courts are to look at what a party is required to

plead.  Bankruptcy Rule 7008(a) provides: "Rule 8 Fed. R. Civ. P. applies in

adversary proceedings."  Fed. R. Bankr. P. 7008(a).  Under Federal Rule of Civil

Procedure 8(a)(2), a pleading must contain a "short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain **sufficient**

**factual matter, accepted as true, to 'state a claim to relief that is plausible on**

**its face**.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)) (emphasis added); see Sarachek v. The Right

Place, Inc. (In re Agriprocessors, Inc.), Ch. 7 Case No. 08-2751, Adv. No. 10-

9123, 2011 WL 4621741, at *3 (Bankr. N.D. Iowa Sept. 30, 2011).  When

evaluating a Rule 12(b)(6) motion, this court views factual allegations in the

complaint in the light most favorable to the non-moving party.    Ritchie v. St.

Louis Jewish Light, 630 F.3d 713, 715 – 16 (8th Cir. 2011).  There are, however,

two constraints on this principle:

19

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule of Civ. Proc. 8(a)(2).

Iqbal, 556 U.S. at 678 – 79 (citations omitted). Moreover, "some factual allegations may be so indeterminate that they require 'further factual enhancement' in order to state a claim." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

Consistent with the Supreme Court's directives, the Court first identifies "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679; see Right Place, 2011 WL 4621741, at *3. Second, to the extent that the complaint contains "factual" allegations, the Court assumes the truth of those facts and determines whether they plausibly give rise to an entitlement of relief. Iqbal, 556 U.S. at 679; see Right Place, 2011 WL 4621741, at *3.

Cedar River argues that Count III of the Complaint, civil contempt, fails to satisfy the Iqbal standards. The civil contempt statute provides:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as – (1) misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2)

misbehavior of any of its officers in their official transactions; (3) **disobedience or resistance to its lawful writ, process, order, rule, decree, or command**.

18 U.S.C. § 401 (emphasis added).

Cedar River argues Custom Poultry fails to properly plead a civil contempt claim. "Debtor asserts without explaining how Cedar River Poultry, LLC's failure to assign leases with PNC, TCF, and Wells Fargo is a violation of the Order Approving Sale (document 159)." (Mt. to Dismiss, ECF Doc. No. 6, at 7.) "Without making a link between how Cedar River Poultry, LLC's failure to sign [this] lease is a violation of the order the Debtor has failed to state a claim upon which relief can be granted." (Id.)

Custom Poultry disagrees arguing the Complaint properly alleges Cedar River failed to assume the unexpired leases and executory contracts listed in the APA included with the Court's May 27, 2011 Order confirming the sale. This failure was a violation of a Court Order as the APA was attached to and referenced in the Court's May 27, 2011 Order.

> The Defendants disobeyed and resisted the Court's Order by refusing to complete their duty to take assignment of the Remaining Contracts and refusing to cure the defaults under the Remaining Contracts, which was in direct opposition to the terms of the APA and the Order entered into by the Court on May 27, 2011 that referenced the terms and conditions of the APA.

(Obj., ECF Doc. No. 10, at 9.)

21

The Court concludes Custom Poultry has pled sufficient facts to support the civil contempt claim in Count III.  Exhibit 2 of the Court's Order incorporated and approved the APA with the terms and conditions that Cedar River allegedly did not follow.  If proven, these facts could sustain a civil contempt finding.  Accordingly, Cedar River's Motion to Dismiss the civil contempt claim for failure to state a claim upon which relief can be granted is denied.

**WHEREFORE,** Defendant Cedar River Poultry, LLC's Motion to Dismiss Complaint (ECF Doc. # 6) is **DENIED**.

Dated and entered:  June 6, 2012

_____
**THAD J. COLLINS**
**CHIEF BANKRUPTCY JUDGE**